ELLINGTON, administrator, *v.* HARRIS.

1. There being no evidence as to what was the law of the State of South Carolina, the presumption is that the common law there prevailed.
2. At common law marriage amounts to an absolute gift to the husband of the personal chattels of which the wife is in possession, in her own right, at the time of the marriage.
3. When the title to personal chattels vests in the husband by virtue of his marital rights, such chattels remain his property until the title to the same is divested in some legal method.
4. If the husband acquires, under the law of another State, title to personal chattels of the wife by virtue of his marital rights, and thereafter brings such chattels within this State, they still remain the property of the husband, notwithstanding the law of this State declaring that the property of the wife at the time of the marriage shall not vest in the husband but remain her separate property. The title acquired under the law of the State of the marriage is not divested by removal of the property to this State.
5. If, after such property is brought into this State, the same is sold and the proceeds invested in land, and title taken in the name of the husband, and the husband dies in possession, title to the land, upon his death, vests in his heirs, and not in the heirs of his wife.
6. Mere admissions by the husband, during his lifetime, that he held the land for the benefit of the heirs of the wife will not divest the title of his heirs, unless it appears that there has been, during the lifetime of the wife, a gift to her of the chattels, title to which was acquired by virtue of his marital rights, or such a gift of the proceeds of the sale of such chattels before the same were invested in the land.

Submitted July 18,—Decided December 12, 1906.

Claim. Before Judge Gober. Cherokee superior court. December 30, 1905.

J. P. Ellington, as administrator of T. R. Ellington, advertised certain land for sale as the property of his intestate. Mrs. Nannie Harris interposed a claim to an undivided half interest in the land. At the trial it appeared that the intestate died in possession of the land, and that the legal title to the same was in him. The evidence relied on by the claimant consisted of admissions made by the intestate, during his lifetime, that the land was purchased with money belonging to the wife; that during her lifetime he held it for her benefit; and that after her death he held it for the benefit of himself and the claimant, who were the only heirs of the wife. There was also evidence that at the time of making some of these admissions he stated that he married his wife in South Carolina, and that at the time of her marriage she had a certain sum of

money and articles of personal property of which he took possession, and that the land was purchased with the proceeds of the property of his wife. It appeared, from some of these admissions, that the marriage of the intestate took place in 1867, and that he removed to Georgia after that date, bringing with him the personal property above referred to. The jury returned a verdict in favor of the claimant, and the administrator assigns error upon the refusal to grant a new trial.

*G. I. Teasley* and *J. P. Brooke,* for plaintiff in error.

*J. Z. Foster* and *P. P. DuPre,* contra.

COBB, P. J. (After stating the facts.) There was no evidence as to what was the law of South Carolina. The presumption is that the common law prevailed at the time of the marriage of the intestate. *Mass. Life Asso.* v. *Robinson,* 104 *Ga.* 276; *Thomas* v. *Clarkson,* 125 *Ga.* 78. The common law, as to the effect of marriage upon personal chattels of the wife, was thus stated by Judge Nisbet, in *Bell* v. *Bell,* 1 *Ga.* 640: "At common law, marriage amounts to an absolute gift to the husband of all the goods, personal chattels and personal estate, of which the wife is actually or beneficially possessed at that time in her own right. All these he acquires an absolute property in and dominion over, by the marital right." The husband needed the interposition of no court to establish his claim to the property of the wife in possession. He took it free from any right of survivorship; he might dispose of it during life or bequeath it at his death; and if he died intestate, it went to his personal representatives. As to choses in action the rule was different. The husband did not acquire title to them unless they were reduced to possession during coverture. If, at the time of the marriage of Ellington, in South Carolina, his wife was in possession of the money and personal chattels referred to in his admissions, the absolute title to the property vested in him, and remained in him until divested in some method provided by law. He might make a gift of this property to his wife, but any one claiming under the wife, as donee from him, carried the burden of showing all the essentials of a gift. When he disposed of this property, and invested the proceeds in land, and took title in his own name, he was still exercising dominion over it as his own; and if no complete gift of the chattels was shown prior to

the investment in the land, then he was the absolute owner of the land, the purchase-money having been paid with his own property.

The judge instructed the jury, in effect, that it was immaterial what was the status of the property in South Carolina, provided they believed that the intestate had dealt with the property as the property of his wife after the same was brought into Georgia. The mere admission, by the intestate, that the land was purchased with property which he received from his wife, would not be sufficient to make out a case in favor of the claimant. The evidence would have to go further and show that the husband had either made a gift of the personal chattels to the wife before they were disposed of and the proceeds invested in the land, or had made a gift of the proceeds before that time. In that view of the case what the status of the property was, at the time it was brought into Georgia from South Carolina, was material to the case, and the instruction of the judge was erroneous. If there had been no gift of the chattels, or proceeds arising from their sale, before such proceeds were invested in the land, then the land, at the time it was purchased and the title taken by the intestate, was the absolute property of the husband. If this is the truth of the case, then his title to the land can not be divested by mere admissions, made from time to time, in his lifetime, that it belonged to himself and his daughter, that he held half of it in trust for his daughter, and the like. Title to land must be evidenced by writing, and declarations of the character above indicated could not create for the benefit of the daughter an express trust in the land; for such trusts must be created or declared in writing. Smith v. Williams, 89 Ga. 9 (2). The admissions relied upon by the claimant, as above stated, were of two classes: first, simple admissions that the land had been bought with money belonging to the wife; and second, that the land had been bought with the proceeds of property acquired from the wife by virtue of his marital rights. On another trial the jury should be instructed that if they believe, from the evidence, that the land was really purchased with money or property which belonged to the wife at the time that the purchase was made, they would be authorized to find in favor of the claimant; but, on the other hand, if they should believe that the land was purchased with money or chattels, title to which the intestate had obtained by virtue of his marital rights, under the law of

South Carolina, that they would not be authorized to find for the claimant, unless they believe that the intestate, during the lifetime of his wife, had made a complete gift of the money and chattels, or the money and the proceeds of the sale of the chattels, prior to the time that the land was purchased and paid for with such proceeds.	*Judgment reversed. All the Justices concur.*